ANNA LEVINE and MEYER KREEGER, as Executors, etc., of NAT LEVINE, Deceased, Appellants, *v.* MAURICE KONHEIM, Respondent.

First Department, December 2, 1938.

*Harold S. Lynton* of counsel [*Meyer Kreeger* with him on the brief, attorney], for the appellants.

*Myron Butler* of counsel [*Isidore Siegeltuch* with him on the brief; *Siegeltuch & Butler*, attorneys], for the respondent.

DORE, J. Plaintiffs, as executors of one Nat Levine, deceased, sue to recover on an agreement between Levine and defendant. The complaint alleges that to induce Levine to subscribe for fifty shares of the preferred stock of Gimbel's Stores, Inc., at par value $100 per share and to pay therefor, defendant agreed on July 27, 1926, that if Levine subscribed for fifty shares defendant would redeem the shares within thirty days from August 1, 1931, at par and accrued dividends if Gimbel's Stores, Inc., did not redeem the stock on or before said date; that in reliance on defendant's agreement Levine did subscribe for and purchase the fifty shares, and paid $5,000 therefor; that the corporation did not redeem the stock on or before August 1, 1931, nor subsequently; that Levine during his life made due demand on defendant to redeem but defendant refused; and plaintiffs demand judgment for $7,000, $5,000 the par value of the fifty shares, and $2,000 accrued dividends at eight per cent from July 27, 1926, to August 31, 1931, with interest. After a trial at Trial Term before the court without a jury the court directed judgment for defendant on the ground that there was no consideration for the agreement to redeem. Plaintiffs appeal from the judgment in defendant's favor.

The material facts are not in dispute and consist almost entirely of documentary evidence and admissions in the pleadings. On

July 27, 1926, defendant, at the time the president of Gimbel's Stores, Inc., delivered to Levine the following memorandum in writing:

" In the event that the preferred stock of the Gimbel's Stores, Inc., to which Nat Levine has subscribed for, is not redeemed by August 1st, 1931, I will personally undertake to redeem this stock at par within thirty days from the above date, and to pay any dividend that may have accrued thereon.

" MAURICE KONHEIM.

" 50 Shares
" Dated, *July* 27, 1926."

On the same date defendant, as president of Gimbel's Stores, Inc., executed and delivered to Levine a preferred stock certificate of Gimbel's Stores, Inc., for fifty shares in Levine's name. The answer admits that defendant executed the above-quoted memorandum; that Levine subscribed for and purchased fifty shares of the preferred capital stock of Gimbel's Stores, Inc., and paid $5,000 therefor. The answer also admits that Gimbel's Stores, Inc., did not redeem the shares or pay the dividends accruing cumulatively at the annual rate of eight per cent, and that defendant refused to recognize plaintiffs' claim.

In his decision the learned trial justice referred to the words " has subscribed for " in the memorandum as showing not a contemplated act but a past act complete at the time, and accordingly held that the decedent was not induced to subscribe by the redemption agreement and that there was no consideration for the promise to redeem. In our opinion this is to isolate the quoted phrase from its context, the group facts of which it is but one, and to rely solely upon the grammatical tense of the verb as conclusive proof that the subscription antedated the issuance of the stock certificate and that the redemption agreement was subsequent thereto. The quoted phrase must be read and interpreted in the light of the conceded facts in the record and when so read it does not appear that the subscription antedated or was a past and completed act when the redemption agreement was made. The redemption agreement and the stock certificate in evidence were signed by defendant on the same day, July 27, 1926; both related to the same subject-matter, the fifty shares of preferred stock, subscribed for by the same named person, Nat Levine, and the two documents thus executed by defendant should be read and construed together. (*Matter of Brandreth*, 169 N. Y. 437, 440.) When so read and construed it appears that the subscription and the promise were made as part of the same transaction, at least in the absence of evidence to the contrary. There is no evidence of any prior sub-

scription by decedent or of any subscription other than the subscription to the fifty shares specified in the redemption agreement and evidenced by the contemporaneous stock certificate. If there were such prior subscription it would be in possession of the corporation under defendant's control as president. No such subscription was produced.

Subscription and payment for stock constitute sufficient consideration for the execution of a contemporaneous agreement to redeem the stock. (*Crook* v. *Scott*, 65 App. Div. 139; affd. on opinion of INGRAHAM, J., 174 N. Y. 520.) Defendant admits this rule of law but alleges it does not apply to the facts in this case because the indemnity agreement sued on proves conclusively on its face that the agreement to redeem refers to and was based upon a subscription prior to the purchase and not the purchase and delivery of the stock which subsequently occurred. But this overlooks the fact that from the evidence before us delivery of the stock was part of one transaction which included the agreement to redeem, and that payment for the stock concededly was made.

In *Crook* v. *Scott (supra)* the plaintiff through her husband agreed to purchase certain corporate stock upon condition that the defendants, directors and officers of the corporation in question, would personally make up any deficiency in the event that yearly dividends at the rate of eight per cent were not paid by the corporation. The indemnity agreement was by letter dated February 13, 1895. After the letter was executed and delivered the stock was paid for. The corporation failed to pay dividends and the plaintiff sued to recover upon the agreement. The receipt for the certificate of stock was dated February twelfth, and the letter of indemnity was dated February thirteenth, but the court said: " There is no evidence that the plaintiff actually received the stock prior to the receipt of this letter [indemnity agreement], the receipt for the stock being dated upon the same day that the certificate is dated, but the consideration for the stock was all paid after the execution and delivery of the letter. The payment by the plaintiff for the stock was a good consideration for the defendants' promise. The sale of the stock and the execution by the defendants of the agreement was one transaction by which the plaintiff bought and paid for the stock, the consideration being the transfer of the stock by the corporation and the agreement by the defendants sought to be enforced."

Defendant also urges lack of mutuality of obligation because nowhere in the written memorandum did Levine agree to sell the stock to defendant, and accordingly defendant asserts there was only a bare promise to redeem, a promise without consideration.

That argument reposes upon the erroneous assumption that the claim here is a promise to redeem in consideration of a promise to surrender the stock for redemption. That is not this case. The claim here is that the promise to redeem was made because of the simultaneously made agreement to subscribe and pay for the stock, both of which considerations Levine fully performed. These facts distinguish this case from the principles of law referred to in *Hallgarten* v. *Wolkenstein* (204 App. Div. 487), on which defendant relies. We will not stress nice grammatical distinctions or make presumptions, in the absence of evidence, regarding parts of a day (of which the law generally takes no notice) to aid a defendant who comes before us with no equity in his favor but seeking to repudiate his written, word after the death of the man to whom he gave it.

On the facts disclosed we conclude that this indemnity contract was not based on an antecedent event. The redemption agreement and the stock certificate were related instruments contemporaneously executed as parts of the same transaction. The certificate and agreement must be read together and considered in the light of the conceded fact that the stock was purchased and fully paid for. Thus construing the two instruments, the phrase " has subscribed for " is descriptive of the concurrently executed subscription and issuance of the stock certificate for fifty shares.

The judgment in defendant's favor should be reversed, with costs, and judgment directed in plaintiffs' favor for $7,000, with interest from August 1, 1931, with costs.

MARTIN, P. J., GLENNON, UNTERMYER and CALLAHAN, JJ., concur.

Judgment in defendant's favor unanimously reversed, with costs, and judgment directed in plaintiffs' favor for $7,000, with interest from August 1, 1931, with costs. Settle order on notice.